HENRY S. HOOKER *et al., Exrs. vs.* JOHN DRAYTON *et al.*

JULY 2, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill in equity for the construction of the last will and testament of Henry Coleman Drayton, late of the city of Newport, deceased. Upon being ready for hearing for final decree in the superior court, the cause was certified to this court for our determination in accordance with general laws 1938, chapter 545, § 7.

The principal question raised in the bill is whether the testator intended, by the direction contained in the sixth clause of his will, to charge his residuary estate with the burdens of the federal estate tax and the New York and Rhode Island inheritance taxes which were assessed or were assessable on his exercise of the power of appointment given to him under the will of his grandmother, Caroline Webster Astor, late of New York, in the state of New York, deceased on October 30, 1908. That clause is as follows: "I direct that all the foregoing gifts, devises, bequests and life interests shall, so far as possible, be paid free and clear of all succession, inheritance or estate taxes, which taxes I direct shall be paid out of the principal of my residuary estate." In the preceding clauses, besides making dispositions of his own estate by way of devise, bequest and annuity the testator had exercised the above-mentioned power.

While the bill seeks an answer as to the incidence of the New York and Rhode Island taxes, it would appear from the briefs that the parties are primarily, if not solely, concerned with the incidence of the federal estate tax. We shall therefore confine our consideration at this time to that tax. It appears that the parties have assumed that such tax is legally assessable on the exercise of this particular power by a donee thereof domiciled in Rhode Island, and that they seek instruction only as to which estate shall bear the burden of that tax,—the estate of the donee of the power or the trust estate of the donor. Whatever is said herein-

after is, therefore, to be understood as in no sense expressing any opinion on the legality of such tax.

From the evidence which was admitted in the superior court it appears that the testator's estate is valued at $293,-559.68, and that the estimated value of the property passing under the exercise of the power of appointment is $208,-214.16. The estimated federal estate tax on the total estate is $103,000, and excluding the appointed property it is $33,000. If the total tax is charged to the estate of the testator and there is no diminution in the estimated value of such estate, the residue after the payment of taxes will amount only to $5,214.16. If there should be any considerable diminution in the value of the estate,—and there is evidence that there may be as much as $36,000,—then not only would there be no residue with which to set up a residuary trust which the testator has expressly provided for his nephew and the latter's issue, but there would also arise the necessity of determining what legacies were subject to abatement and the extent thereof. Whether or not we should take such latter evidence into consideration in determining the testator's intention as to whether his estate alone should bear the burden of the federal estate tax, we leave for discussion later in this opinion.

Before seeking to find the testator's intention by construing the language of the sixth clause, it is desirable at this point to state some well-established principles pertaining to powers of appointment under the law of this state and also to their taxability under the federal estate tax law. The respondents appear to contend, if we understand them correctly, that the property subject to the power of appointment in the instant cause is, by force of the federal law, deemed to be a part of the testator's estate. And they further contend that, as a part of such estate, such property is to be treated in law as his own and made subject to the same rules as govern his own estate. One of those rules, they urge, is "that, failing any testamentary provision to the contrary, debts, charges and all obligations upon

an estate must be paid out of the residue" of an estate. *Hazard* v. *Board of Tax Commissioners*, 43 R. I. 431, 444. Therefore, they insist that, since even without the testamentary language of the sixth clause, the federal estate tax would thus be charged against testator's residuary estate there is all the more reason for construing such clause as an express direction of the testator to the same effect.

This is a plausible argument, but it fails because its premises are faulty. The federal estate tax law does not make property appointed under a general power a part of the decedent donee's estate. It merely includes such property in the estate of such decedent for the purposes of assessing and collecting the tax. Int. rev. code, § 811 (f). As a question of property and its devolution it is a subject of state law. Until October 21, 1942 the federal law was silent as to the incidence of the tax. On that date an amendment to the law providing for apportionment was approved and is now § 826 (d) of the Internal Revenue Code, but that amendment is not applicable here since the testator died on March 22, 1942 before it became effective.

The fact that the statute provides that the tax is to be paid by the executor before distribution of the estate has led to some confusion in that certain state courts have construed it as a mandate of congress charging the tax upon the decedent's residuary estate. *Matter of Hamlin*, 226 N. Y. 407; *Matter of Oakes*, 248 N. Y. 280; *Dexter* v. *Jackson*, 245 Mass. 333 and *Bemis* v. *Converse*, 246 Mass. 131. But at least since 1922 the interpretation of the treasury has been that it was not interested in the incidence of the burden of the estate tax. See art. 85, regulation 63 and subsequent regulations. And it was held by the federal circuit court of appeals of the 2d circuit in 1923 that "so far as the words of this statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden-bearing, the state courts can settle the matter." *Ed-*

*wards* v. *Slocum*, 287 Fed. 651, 653, aff. 264 U. S. 61.

Notwithstanding that decision, the New York court of appeals adhered to the view that congress had definitely provided that the burden of the tax rested upon the decedent's residuary estate. That court went even to the extent of holding that a New York statute which provided for apportionment of the tax violated both the supremacy and uniformity clauses—Art. VI, cl. 2 and art. I, sec. 8, cl. 1— of the federal constitution. *Matter of Del Drago,* 287 N. Y. 61. That case, however, prompted the United States supreme court to grant *certiorari* in order finally to determine the question. It was there definitely decided "that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax." *Riggs, Jr.* v. *Del Drago,* 317 U. S. 95. While that case did not involve a power of appointment, the construction of the federal statute therein made is, in our opinion, equally applicable to a case involving a power, at least to a case arising, as the instant one does, under the statute as it stood before the amendment of October 21, 1942—I. R. C., § 826 (d). Whether or not such amendment has effected any material change in the applicability of state law to cases arising since its enactment we, therefore, need not consider.

Now what is the applicable state law here? It is true that the rule here is, as it is generally, that, in the absence of a contrary testamentary direction, the burden of all debts, charges and obligations falls upon the residue of the estate. *Hazard* v. *Board of Tax Commissioners, supra.* But the rule as thus stated is applicable only to the true estate of the testator within the meaning of our law of property. Under that law, property which is transmitted by a testator in the exercise of a power granted to him by another to appoint by will is neither in law nor in fact a part of the testator's estate. *Van Allen* v. *Bliss,* 49 R. I. 379. An act

of congress containing a provision expressly designed to facilitate the collection of the federal revenue does not alter the law of property of this state. So the federal estate tax statute "while it assumes that the entire tax should be paid out of the residuary estate, does not propose to regulate the question." 1 Paul, Federal Estate & Gift Taxation, § 9.26, p. 476. "It did not undertake in any manner to specify who was to bear the burden of the tax." *Riggs, Jr.* v. *Del Drago, supra.* And such was the view clearly expressed by this court at page 452 of its opinion in *Hazard* v. *Board of Tax Commissioners, supra.* It was therein further said that the federal government "cannot claim that .the privilege to transmit the property of a decedent is one granted by it."

It is clear, therefore, that the appointee of the appointed property benefits not out of the estate of the donee of the power, but out of the estate of the donor. "It is a recognized rule of the common law that a bequest which comes to a beneficiary through the exercise of a power of appointment or by reason of a failure of its exercise is a gift to the beneficiary from the creator and not from the donee of the power." *Manning* v. *Board of Tax Commissioners,* 46 R. I. 400, 404.

What then is the true rule of construction to be followed in determining whether the estate of a decedent donee of a power to appoint by will is to be charged with the burden of the federal estate tax assessed on the exercise of the power? We think it is this: In the absence of a clearly expressed intent to the contrary in the decedent donee's will such tax is ultimately to be borne by the appointed property, and not by his residuary estate. Such a rule is more consistent with logic and the realities than is a rule which, in the absence of a testamentary expression to the contrary, would assume that the residuary estate of the donee was chargeable with such tax burden.

It is natural and logical to assume that a testator would ordinarily be unwilling to burden his own estate with es-

tate taxes allocable to property of another. As this court said, in construing our inheritance tax statute: "The intent thus to burden a decedent's estate with the payment of an inheritance tax upon the transfer of property which was not his, and did not pass under his will or by the statutes of descent, is so unreasonable and unjust that we will not find the intent upon conjecture, but will require that the purpose be explicitly declared." *Manning* v. *Board of Tax Commissioners, supra,* 409. If this court could thus speak of the necessity for an express declaration of legislative intent in such a case, there would appear to be even stronger reason for our requiring an explicit declaration by the testator before saddling upon his estate a burden foreign to it and one which could, under certain circumstances, adversely affect the express dispositions which he has made of his own property.

The question here, therefore, narrows down to whether or not the testator has, in the sixth clause, expressed such an intention to thus burden his estate. We are of the opinion that he has not explicitly expressed such an intention in that clause. When we consider the whole will and the circumstances surrounding the testator, it seems clear that he therein made a distinction between his own property and that of his grandmother, Caroline Webster Astor, over which he merely had a power to appoint by his will. In those clauses of his will where he disposes of his own property, he uses the customary dispositive words of "gift", "devise" or "bequest", whereas in the fifth clause where he disposes of his grandmother's property he is careful to say not that he gives or bequeaths, as he did of his own property, but that "in the exercise of the said power . . . I do hereby direct and appoint." In other words, he differentiates between such a disposition and his prior dispositions such as gifts, devises and bequests.

An appointment is not a devise, a gift or a bequest of the testator; it is *sui generis.* In our opinion the testator so considered it. Therefore, when he came to write the

sixth clause, he was careful to restrict the scope thereof by enumerating specifically only "gifts, devises, bequests and life interests" and by omitting "appointments". Certainly if he did not intend such enumeration to be restrictive but intended to include all dispositions which he had made, of whatever nature, it would have been easy to do so without the necessity of resorting to a specific enumeration.

In each of the following cases involving powers of appointment the will under construction contained language directing payment of taxes not unlike the language before us, and in each case the court found that the testamentary language did not disclose an intent of the testator to burden his own estate with the payment of the tax which was allocable to the appointed property: *Fidelity Union Trust Co.* v. *Suydam*, 125 N. J. Eq. 458, 6 A. 2d 392; *Loring* v. *Gardner*, 221 Mass. 571; *Trainer* v. *Scott*, 248 N. Y. 171. See also *Matter of Rogers*, 249 App. Div. 238, where, although there was some variation in the testamentary language before the court, the reasoning appears to be applicable to the testamentary language herein involved.

The circumstances surrounding the testator when he came to draw his will also militate against the view that he intended his estate to bear such an additional tax burden. Testator was a wealthy man without children of his own. He desired apparently to leave the bulk of his estate, after devising certain real estate, making several minor bequests and providing annuities for two faithful servitors, to those of his own blood as near as possible. Accordingly, he set up a residuary trust and gave the income to his nephew, John Drayton, with remainder over to the latter's lawful issue, but failing such issue then to testator's niece Margaret A. L. Drayton Haugwitz-Reventlow for life with remainder over to her lawful issue. Apparently his dominant intent in setting up such trust was to conserve his estate for the benefit of such issue, or, preferably, the issue of his nephew.

If the testator intended his estate to be burdened with the taxes on the appointed property then he must have known that the addition of such a charge would greatly diminish his residuary estate. Without considering the evidence of the diminution in value of testator's New York real estate, which we probably should not, it nevertheless appears that the residuary estate would be reduced by the comparatively huge sum of $70,000 if it is to be charged with the payment of such tax. It is unlikely, in our opinion, that the testator contemplated such a disproportionate reduction in his residuary estate when he created the trust estate for the benefit ultimately of his nephew's issue or, under certain conditions, his niece's issue. On the contrary, it is more reasonable to infer that in estimating what would probably be available for his trust estate he calculated only the tax burden on his own property. It was possible for him, on such calculation, to satisfy himself that a substantial sum would remain in the residue of his estate to yield a reasonable net income for the life beneficiary, after payment of the expenses of the trust, and to justify holding it in trust for the ultimate beneficiaries whom he primarily had in mind.

It may be argued that to differentiate between an appointment under a power to appoint by will and a gift by the testator out of his own estate is to make a distinction without a difference. In fact the respondents appear to so argue, at least inferentially, by their citation of *Isham* v. *New York Assn.*, 177 N. Y. 218, 223. There the New York court of appeals said: "The effect of conferring a general power of appointment is to invest its donee with a power of disposition as broad as though she was disposing of her own property. In its exercise she, in fact, makes a gift, or bequest, to persons of her own selection." But, in our opinion, the fact that the donee is free to select the beneficiary is not the sole test of the generality of the power. It must also be clear that the donee has "an absolute disposing power over the estate, and may bring it into the market whenever

his necessities or wishes may lead him to do so. Where the donee of a power cannot exercise it for his own benefit during his lifetime, the power is not general." 21 R. C. L. 774, citing *Wales* v. *Bowdish,* 61 Vt. 23.

Whatever may be said of a power to appoint generally in the lifetime of the donee, a power to appoint by will does not fulfill the above requirements. Because such a power clearly lacks the full requirements of a general power, this court has expressly refused to permit property appointed by will to be subjected to the demands of the creditors of the decedent donee of the power to appoint. *Rhode Island Hospital Trust Co.* v. *Anthony,* 49 R. I. 339. There it was said: "The appointed property is not a part of the donee's estate and as such available for the payment of his debts." And the court cited with approval *Wales* v. *Bowdish, supra,* and cases from Maryland and Pennsylvania holding, contrary to the prevailing rule, that property so appointed could not be subjected to payment of the donee's debts.

Under the general rule the equity of the donee's creditors rests upon the donee's power to appoint in his own favor. It is clear that this court in *Rhode Island Hospital Trust Co.* v. *Anthony, supra,* must necessarily have been of the opinion that the donee of a power to appoint by will did not have the right to appoint in his own favor or for the benefit of his creditors. The cases which the court cited and upon which it relied, especially those from Maryland, specifically so held. We are, therefore, constrained to say that a power to appoint by will does not have in this state a scope sufficiently comprehensive to enable us to hold that an appointment under such a power is equivalent to a gift of the donee's own property.

For the reasons above stated we hold that the testator did not intend that his estate should pay the tax assessed by the federal government upon the exercise of the power of appointment. The total federal estate tax should, therefore, be apportioned between the estate of the testator and

the trust estate which passed by the exercise of the power of appointment.

While the bill of complaint raises specific questions as to the incidence of the inheritance taxes of Rhode Island and New York it appears from the briefs of the parties, first, that the Rhode Island inheritance tax is not assessible and, second, that the New York inheritance taxes are merely nominal and therefore relatively unimportant. Consequently we see no imperative necessity of an answer in the case of either question as to where the burden of such taxes would fall.

The remaining questions, excepting only question number 7, do not require an answer in view of our answer to questions number 1 and 2 pertaining to the incidence of the federal estate tax. Question number 7 is whether certain annuities provided under the fourth clause of the testator's will are payable from the date of the testator's death. In answer thereto, there would seem to be no question that such annuities are payable from the death of the testator, both by force of the statute and by the holdings of the decided cases. G. L. 1938, chap. 566, § 37. *McCrillis* v. *McCrillis*, 49 R. I. 240; *Frelinghuysen* v. *New York Life Ins. Co.*, 31 R. I. 150.

The parties may appear before this court on July 6, 1943, and present a form of decree, in accordance with this opinion, for entry in the superior court.

*Sheffield & Harvey,* for complainants.

*Burdick, Corcoran & Peckham, William A. Peckham,* for respondents, John Drayton and William M. Cruikshank and William Cruikshank, Trustees u/w Caroline Webster Astor.

*Raymond J. McMahon, Nathan J. Sokoletsky* of Massachusetts Bar, for respondents, Arthur John Allen and Margaret Allen.

*Leo L. Tobak,* representative for certain persons unascertained and not in being.