255 P.2d 317

## In re GALLAGHER'S WILL.

### No. 5532.

Supreme Court of New Mexico.
March 28, 1953.

Quincy D. Adams, Albuquerque, for appellant.

Irwin S. Moise and Lewis R. Sutin, Albuquerque, for Thomas P. Gallagher, Jr., and Robert E. Gallagher.

John P. Dwyer, Albuquerque, for Thomas P. Gallagher, III and others.

Simms, Modrall, Seymour & Simms, Albuquerque, for Albuquerque Nat. Bank, trustee.

COORS, Justice.

Thomas P. Gallagher died testate in Albuquerque, New Mexico, in 1947. He left an estate which for federal estate tax purposes was comprised of community property, property held in joint tenancy with his surviving wife, Caroline M. Gallagher, and insurance proceeds. The total community assets amounted to $1,132,662.77 before allowable deductions. The jointly held property was valued at $57,390.02, and insurance benefits to the widow were paid in the sum of $75,986.84.

Decedent's will by its terms disposed of his separate estate and all of the community assets. A trust was provided thereby for the benefit of the wife and children (or the heirs of the body of children dying before termination of the trust) and the residuary estate was to go to the wife. She chose, however, to renounce the will and take her

one-half of the community property and the property held jointly.

The Final Account and Report of the executors presented two alternate plans of distribution: Plan One, which was subsequently adopted by the lower court, provided for distribution charging the federal estate taxes to the entire community estate prior to distribution, except the amount of federal estate tax levied against jointly owned property and the proceeds of the life insurance, which was apportioned and charged solely to the widow. Plan Two charged all of such taxes to the one-half of the community property owned by the decedent.

Various objections were filed to the Final Account and Report, which objections were based upon conflicting views as to who should bear the ultimate burden of the payment of taxes to the state and federal governments, and the contention of the widow she should be subrogated to the claim against the estate of the Kanawha National Bank for $10,272.10 on a promissory note given by the decedent.

The lower court directed apportionment of the federal estate tax and charged the surviving wife's share of the property with taxes attributable to her one-half interest in the community, all of the insurance and the jointly held property. It allowed her claim of subrogation, and further ruled all taxes paid to the State of New Mexico should be borne solely by the decedent's half of the community property after division.

From certain of these rulings the widow appeals, and as to certain others the children and grandchildren of the decedent who take under his will and the Albuquerque National Bank, as testamentary trustee, have filed cross-appeals. Other facts necessary to a consideration of the problems here raised appear in the body of this opinion.

The first question raised on this appeal is whether or not the widow should bear a proportionate share of the burden of the federal estate tax when her share of the community is included in the estate of her deceased husband for federal estate tax purposes.

The federal estate tax enactment of 1942, 26 U.S.C.A. § 811(e) (2), amended the earlier provision so as to include in the gross estate, for purposes of taxation of decedent's estate, the interest of the surviving spouse in community property. This statute, so far as here pertinent, reads as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * *.

"Community interests.—To the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. In no case shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition."

Although this provision has since been repealed, April 2, 1948, 62 Stat. 116, it was in effect at the time of the death of the testator in 1947.

The constitutionality of this statute was challenged in Wiener v. Fernandez, D.C., 60 F.Supp. 169 and Rompel v. United States, D.C., 59 F.Supp. 483, twin cases involving community estates in Louisiana and Texas respectively. The federal district courts in both instances held the taxes as levied violative of the due process clause of the federal Constitution. On appeal the United States Supreme Court reversed the decisions and held the tax constitutional.

Fernandez v. Wiener, 1945, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 and United States v. Rompel, 1945, 326 U.S. 367, 66 S.Ct. 191, 90 L.Ed. 137.

The Wiener case like the Rompel case, arose upon an action to recover the amount of the federal estate tax which was attributable to the inclusion in the decedent's gross estate of his wife's share in the community. For present purposes, the nature of the interest of husband and wife in the community in Louisiana is essentially the same as that existing in New Mexico, except that in Louisiana if the wife dies first, her share of the community estate goes to her heirs or designees, subject, however, to the payment of community debts. See Louisiana Civil Code, 1945, articles 2406, 2409 and 2430, LRS–C.C.

In the Wiener case it was contended that since the husband and wife each own a present, vested one-half interest in the community from the moment of its initiation, the death of either spouse effects no transfer of that interest, except as to the one-half owned by the decedent before death, and the survivor acquires no new or different interest in his other half of the property because of the death of the spouse. It was therefore urged that upon the death of husband or wife there was no event which could bring more than one-half of the community property under the power of Congress granted by Article 1, § 8, of the Con-

stitution to "lay and collect * * * Imposts and Excises", [326 U.S. 340, 66 S.Ct. 181,] and that the taxing of the entire value of the community property on the death of either spouse was a denial of due process in that the tax so imposed was measured by property belonging to another than the decedent.

The Supreme Court of the United States ruled in response to these contentions that the power of Congress to impose death taxes is not limited to the taxation of transfers at death, but that it "extends to the creation, exercise, acquisition, or relinquishment of any power or legal privilege which is incident to the ownership of property." The court likened the situation to that where the tax had been upheld when measured by the entire interest on tenancies by the entirety and joint tenancies in Tyler v. United States, 1930, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758 and United States v. Jacobs, 1939, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763. With respect to changes occurring in the interest of the wife in the community property upon the death of the husband, the court said

> " * * * the death of the husband of the Louisiana marital community not only operates to transfer his rights in his share of the community to his heirs or those taking under his will. It terminates his expansive and sometimes profitable control over the wife's

share, and for the first time brings her half of the property into her full and exclusive possession, control and enjoyment. The cessation of these extensive powers of the husband, even though they were powers over property which he never 'owned', and the establishment in the wife of new powers of control over her share, though it was always hers, furnish appropriate occasions for the imposition of an excise tax.

\* \* \* \* \* \*

"This redistribution of powers and restrictions upon power is brought about by death notwithstanding that the rights in the property subject to these powers and restrictions were in every sense 'vested' from the moment the community began. It is enough that death brings about changes in the legal and economic relationships to the property taxed, and the earlier certainty that those changes would occur does not impair the legislative power to recognize them, and to levy a tax on the happening of the event which was their generating source."

While the reasoning on which the constitutionality of the Act of 1942 was upheld has been severely, and we believe properly, criticized, see 1 de Funiak, Principles of Community Property, Sec. 255; Taxation of Community Property; The Wiener

Case, 18 Tulane L. Rev. 525; The Estate and Gift Tax Amendments: Revenue Act of 1942, 31 Cal.L.Rev. 60; and In re Monaghan's Estate, 1946, 65 Ariz. 9, 173 P.2d 107, there can be no question of the validity of the tax imposed, and our concern here is, as above stated, whether or not the amount of the tax which is attributable to the interest of the surviving wife in the community property should be ultimately borne by her.

The Supreme Court of the United States has declared in Riggs v. Del Drago, 1942, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131, that the federal estate tax provisions do not describe who shall ultimately bear the brunt of the payment of the tax, but the matter is one for local control. The opinion in Hooker v. Drayton, 1943, 69 R.I. 290, 33 A.2d 206, 209, 150 A.L.R. 723, gives a concise resume of the matter prior to and under the Del Drago case:

"The fact that the statute provides that the tax is to be paid by the executor before distribution of the estate has led to some confusion in that certain state courts have construed it as a mandate of Congress charging the tax upon the decedent's residuary estate. (Citing cases.) But at least since 1922 the interpretation of the Treasury has been that it was not interested in the incidence of the burden of the estate tax. See Art. 85, Regulation 63, and subsequent regulations. And it was held by the Federal Circuit Court of Appeals of the 2d Circuit in 1923 that 'so far as the words of this statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden bearing, the state courts can settle the matter.' Edwards v. Slocum, 287 F. 651, 653, affirmed 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564.

"Notwithstanding that decision, the New York Court of Appeals adhered to the view that Congress had definitely provided that the burden of the tax rested upon the decedent's residuary estate. That court went even to the extent of holding that a New York statute which provided for apportionment of the tax violated both the supremacy and uniformity clauses—Art. VI, cl. 2 and Art. I, Sec. 8, cl. 1—of the federal constitution. Matter of Del Drago's Estate, 287 N.Y. 61, 38 N.E.2d 131. That case, however, prompted the United States Supreme Court to grant certiorari in order finally to determine the question. It was there definitely decided 'that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should gov-

ern the distribution of the remainder and the ultimate impact of the federal tax.' * * *"

■ It is universally recognized the testator has the right by his direction to make the federal estate tax payable from any portion of his estate he may designate. In the annotation following the report of Riggs v. Del Drago, supra, at 142 A.L.R. 1135, it is stated, at p. 1140:

"That a testator has the right by testamentary provision to place the burden of estate taxes where he wishes seems to be unquestioned. Indeed, the Federal estate tax statute makes provision for the exercise of such a prerogative. (Sec. 826 (b), 26 U.S.C.A. set out in full under point two hereof). The problem of the courts is to ascertain the intent of the testator, and when this is done, to effectuate that intent through its decrees." (Parenthetical material supplied).

■ When the will is silent on the question, and there is no applicable statute of apportionment, there is a clean split in the authorities on where the ultimate burden of payment should fall, as regards property which does not pass under the will, with some courts saying it must fall solely upon the residuary estate, and others saying it must be borne ratably by the beneficiaries under the principle of equitable apportionment. In the view we take of the instant

case, the decedent's will clearly expresses his intent that if his wife chose to take her share of the community by law rather than accept the provision made for her by will, that she was to receive no benefit from any of the provisions of the will. We therefore feel it is more appropriate to discuss and pass upon the problem of equitable apportionment under the following portion of this opinion dealing with apportionment of the federal estate tax upon property the decedent and his wife owned in joint tenancy, where the question is squarely raised.

Item 7 of the will provides:

"It is my intention hereby to dispose not only of my separate estate and my share of the community property owned by me and my said wife, but also of the entire community property. In the event that my said wife shall elect to take the part of our community property allowed her by law, the remaining provisions hereof, disregarding those in favor of my said wife, shall be carried into effect."

The widow seeks to take advantage of Item 5 of the will, which reads as follows:

"All taxes owed by me at the time of my death, all taxes due by reason of my death and all taxes levied and assessed against my estate during the course of administration shall be paid from the residue of my estate."

As reflected in Exhibit E appended to the Final Account and Report, the amount of the federal estate tax attributable to the wife's interest in the community, and including the tax on property held in joint tenancy and insurance benefits accruing to her, is $155,798.74, which the lower court ruled should be deducted from her share of the community. In support of this ruling the appellees contend the wife is not entitled to the benefit of Item 5 of the will because of the language of Item 7, and further, that since she has renounced the will she cannot now assert an advantage accorded to her under its provisions.

The testator has unambiguously stated his intention to be that in the event his wife should renounce the will, she is to take nothing thereby, and that would certainly exclude her from the benefits of Item 5, and, in effect, it is directed that she shall bear the burden of taxes attributable to her half of the community.

The case of In re Heringer's Estate, 1951, 38 Wash.2d 399, 230 P.2d 297, 300, closely parallels the instant case. There the executor appealed from a determination the total amount of the federal estate tax should be charged solely against the separate estate of the decedent and his one-half interest in the community, the tax having been imposed under the provisions of the revenue act of 1942. The surviving wife renounced the will and claimed only her one half of the community. The testator thought all of the property was his separate estate, although the major portion of it was community property. The will which attempted to dispose of all the property contained a provision if the wife should contest it, or claim more of the estate than was given to her thereunder, the devise and bequest to her should lapse and be void and in that case he devised her nothing. With respect to federal estate taxes the will provided the executor should pay all costs and expenses incident to the probate of the estate, including federal and state inheritance taxes payable with reference to any of the devises or bequests therein made and that the taxes so paid were not to be deducted or charged against the specific devises and bequests.

The Supreme Court of Washington held this latter provision "by inference, directs the executor not to pay such taxes out of the assets of the estate with reference to any property which does not pass by devise or bequest." The court continued:

"Moreover, it is to be observed that, * * * it is provided that if the testator's wife attempts to claim a share of the estate as community property, the devise and bequest to her under the will lapses and 'I devise nothing to her.' Since the wife elected to claim her share of the community property, then, under the provision just referred to, the testator makes it clear that she

is to receive no benefits by virtue of the will. It follows that the will should not be construed as giving her, in effect, a bequest equal to the amount of the Federal estate tax on the value of the community property which she has claimed."

The wife here attempts to distinguish the Heringer case from the present situation on two grounds: First, that the provisions in the two wills are dissimilar, and secondly, that the interpretation of the community property system prevailing in Washington is unlike that in New Mexico.

While the provisions of the two wills are not identical their reasonable import is the same. It is true the terms of Item 5 do not limit the power of the executor to pay the taxes from the residue of the estate only as respects specific devises and bequests contained in the will, but it cannot be construed to provide for payment of taxes due on the wife's share of the community when by Item 7 the testator anticipated she might renounce the will and he provided in that event none of its provisions in her favor should be carried into effect.

As to the second attempted distinction which lies in the differences existing between the community property concept in Washington and New Mexico, the widow points to a statement made by this court in McDonald v. Senn, 1949, 53 N.M. 198, 204 P.2d 990, 10 A.L.R.2d 966, to the effect the Washington community property law is based on the theory of tenancy by entireties and that there community property is not liable for the separate debts of the husband or the wife. Certainly, from state to state where the community property system is in usage, there are variations in its interpretation and application; but Washington, like New Mexico, recognizes the wife has a present vested one-half interest in community property. Holyoke v. Jackson, 1882, 3 Wash.Terr. 235, 3 P. 841; Warburton v. White, 1900, 176 U.S. 484, 20 S.Ct. 404, 44 L.Ed. 555; Bortle v. Osborne, 1930, 155 Wash. 585, 285 P. 425, 67 A.L.R. 1152; and Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

Indeed, the fact of such vested interest in the wife was the substance of the argument to the court the tax should rightfully be paid from the decedent's half of the community and his separate property. In treating this contention, in the Heringer case, supra, the court said:

"* * * The purport of respondent's argument seems to be that, since the surviving spouse takes her half interest in the community property as a matter of right, she should not be required to pay a succession tax which is based on the theory that there has been a transfer of decedent's property, even though such tax is measured by the gross community estate.

"There might be some merit in this argument if the Federal estate tax applicable to the survivor's share of community property, under the 1942 amendment, was in fact a transfer tax. Even then, however, although we can protest that there has been no 'transfer' and that therefore no such tax should be imposed, the fact remains that it was imposed. It is difficult to see how the situation can be remedied by requiring the decedent's share of the community property to carry the burden, unless we want to say that it was his fault for dying."

The decision of the Washington court then carefully analyzes the decision in the Wiener case, and continues:

"* * * the basis of the tax is said to be the intangible benefits received by the survivor as a result of the dissolution of the community by death. This being the case, we see no objection, from a public policy standpoint, to permitting the survivor's share to bear the burden of that tax where the testator inferentially indicates such a desire.

"This is not to say that, from the viewpoint of a community property state, we believe that the survivor receives such benefits as ought to be made subject to an estate tax. That is a legislative question. It may be noted that, in 1948, Congress repealed the 1942 amendment and restored community property to the estate tax status it had prior to the 1942 act. * * *"

We are in accord with so much of the Washington opinion as recognizes the testator may by provisions in his will direct the incidence of the burden of the federal estate tax, and with their ruling he had in that case directed the tax attributable to the wife's share of the community property should not be paid by his residuary estate.

While the imposition of a tax measured by the surviving wife's share of the community is objectionable under our interpretation of community property law, the tax has been imposed; the determination of who shall finally bear the burden is left to the separate states; the intention of the testator in this case was not to benefit his wife in any manner by his will if she renounced its terms as to the community property; therefore, all that remains is to effect that intent. The action of the lower court in apportioning to the widow the burden of taxes arising from the inclusion in the decedent's gross taxable estate for federal estate tax purposes effects that intent and is approved.

The contention of the widow that the courts of this state do not have authority to direct equitable apportionment is without merit. Reference is hereby made to the portion of this opinion immediately follow-

ing where such contention is treated at length.

In her second point on this appeal the widow urges she cannot legally be charged with the entire portion of the federal estate tax attributable to property which she owned with the decedent in joint tenancy and which is now her sole property by right of survivorship. It is estimated that approximately $15,000 of the total federal estate tax of $155,798.74 apportioned to her interest in the gross taxable estate is attributable to such jointly owned property.

The argument of appellant under this point is roughly divisible into three contentions. (1) That the courts do not have authority to make equitable apportionment of this tax burden; that under the majority rule the federal estate tax is placed solely on the estate of the decedent and in the absence of a contrary direction by the testator, or applicable statute of apportionment, the entire tax burden falls upon the residuary estate of the decedent; that an order of apportionment in absence of these circumstances amounts to a legislative imposition of a tax on the part of the court. (2) That the apportionment made is inequitable because it is computed by measuring the proportion which the property held in joint tenancy bears to the entire taxable estate and burdening her with that proportion of the tax. She seems to contend the tax proportionately due from the property held in joint tenancy should be computed as if the joint tenancy holdings were the only taxable item in the estate, with the result that there would be no tax liability. (3) Lastly, she contends it is unfair that she should bear the burden of tax on the entire property in joint tenancy because she owned a one-half interest in such property before her husband's death.

With respect to the first contention, we are called upon to rule whether or not the court has power, in the absence of statutory authority, to make any apportionment of the burden of the federal estate tax generated by the inclusion in the gross estate of non-probate assets. We should note none of the parties to this action invoke any provision of the will with respect to the joint tenancy problem.

As the question is one of first impression in this jurisdiction, and has been regarded as a particularly troublesome and controversial one, it is necessary to review the history of the interpretation of the theory of the federal estate tax act and to consider pronouncements of the courts of other jurisdictions on the question.

At the outset it is well to quote two provisions of the federal estate tax enactment. Section 822(b), 26 U.S.C.A. provides:

"The tax imposed by this subchapter shall be paid by the executor to the collector."

Section 826(b), 26 U.S.C.A. provides:

"If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution."

We have heretofore, under point one, discussed the case of Riggs v. Del Drago, supra [317 U.S. 95, 63 S.Ct. 110], which case holds, in substance, "that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax". Most jurisdictions prior to this case, and many after that decision followed the rule that where the will was silent on the incidence of the tax burden, and in the absence of statutory authorization for apportionment, the entire burden of the tax fell upon the residuary estate.

Various theories are urged in support of this result. First, there is the theory of the distinction between inheritance taxes on the one hand and estate taxes on the other. Since estate taxes are held to be taxes upon the privilege of transfer, it must necessarily follow the tax is not imposed against the interest of the recipients under the will or statutes of descent and distribution. Second, there is the argument that by the terms of the federal act the executor is charged with the payment of the tax out of the assets of the estate before distribution and that such payment must be made like those of debts, funeral expenses or general administration expense from the residuary estate. Lastly, some cases give voice to the view, where there is a will that is silent on the question of the payment of such tax, that the testator must have intended to benefit the objects of his bounty to the extent declared in the specific bequests and devises and that he did not intend such properties to be burdened with the tax.

A lucid discussion of all of these views and collection of authorities is contained in Amoskeag Trust Co. v. Trustees of Dartmouth College, 1938, 89 N.H. 471, 200 A.

786, 117 A.L.R. 1186, which case overruled an earlier doctrine prevailing in New Hampshire that unless the will otherwise directed the tax was to be paid out of the estate and charged pro rata to each beneficiary.

The case cited as the leading authority for placing the entire burden on the residuary estate is that of Y.M.C.A. v. Davis, 1924, 264 U.S. 47, 44 S.Ct. 291, 292, 68 L. Ed. 558, a case involving testate succession, the Supreme Court interpreted the federal estate tax as an excise imposed upon the transfer of an estate upon death of the owner, saying:

"* * * It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties, as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death."

After this declaration, and in consideration the tax is made payable by the executor out of the assets of the estate before distribution (wherever practicable), the rule evolved in absence of statute making other provision that payment of the federal estate tax from the residuary estate was required unless the decedent otherwise directed. Even after the decision in Riggs v. Del Drago, supra, which upheld the constitutionality of the New York apportionment statute, some jurisdictions adopted the rule thought to be pronounced in the Y.M.C.A. case. See the following cases: Farmers' Loan & Trust Co. v. Winthrop, 1924, 238 N.Y. 488, 144 N.E. 769; Ericson v. Childs, 1938, 124 Conn. 66, 198 A. 176, 115 A.L.R. 907 Annotated; Gelin v. Gelin, 1949, 229 Minn. 516, 40 N.W.2d 342; Seattle-First Nat. Bank v. Macomber, 1949, 32 Wash.2d 696, 203 P.2d 1078, and Brauburger v. Sheridan, 1950, 7 N.J.Super. 576, 72 A.2d 363. Annotations on the question are to be found in 142 A.L.R. 1135 and 15 A.L.R.2d 1216.

In certain jurisdictions principles of equitable apportionment have been applied without renouncing the earlier, and what has been termed the majority, rule. Such application has been effected where the will of the testator contained language providing for the payment of the federal estate taxes from a certain fund with respect to the "estate" of the testator, or "specific devises, legacies and bequests," upon the theory that non-probate assets are not part of the "estate" under local law, or that such assets, not passing under the will, were not intended to be benefited by relief from the tax burden when not specifically included in the direction of the testator, and that they are, by inference, excluded.

Perhaps the earliest case so holding is from New Jersey, Gaede v. Carroll, 1933,

114 N.J.Eq. 524, 169 A. 172. There the will directed the bequests or provisions therein made in favor of the testator's wife, or for her benefit, would go to her free from any and all inheritance or other taxes. Under this provision the court held the residue of the estate was liable for all taxes on property passing to the widow under the will, but that the executor was entitled to reimbursement for taxes attributable to property formerly held by the spouses as tenants by entireties and includible in the gross taxable estate.

This decision has been steadfastly adhered to by the New Jersey court and among such decisions see Fidelity Union Trust Co. v. Suydam, 1939, 125 N.J.Eq. 458, 6 A.2d 392 and Vondermuhll v. Montclair Trust Co., 1951, 14 N.J.Super, 300, 81 A.2d 822. For similar holdings, see In re Ryan's Estate, 1942, 178 Misc. 1007, 36 N.Y.S. 2d 1008 and In re Bernheimer's Estate 1943, 352 Mo. 91, 176 S.W.2d 15.

In recent years a number of jurisdictions have adopted the so-called minority rule, to wit: Indiana, Rhode Island, Louisiana, Georgia, Ohio and Florida. These states now declare the general rule that the residuary estate shall be liable for the payment of the federal estate tax, in the absence of other provision by the testator, or apportionment statute, has no application to non-testamentary property or non-probate assets. Kentucky has long applied such rule.

See Pearcy v. Citizens Bank & Trust Co. of Bloomington, 1951, 121 Ind.App. 136, 96 N. E.2d 918, 98 N.E.2d 231; Miller v. Hammond, 1952, 156 Ohio St. 475, 104 N.E.2d 9; McDougall v. Central Nat. Bank of Cleveland, 1952, 157 Ohio St. 45, 104 N.E.2d 441; Hooker v. Drayton, 1943, 69 R.I. 290, 33 A. 2d 206, 150 A.L.R. 723; Industrial Trust Co. v. Budlong, 1950, 77 R.I. 428, 76 A.2d 600; Union Trust Co. v. Watson, 1949, 76 R.I. 223, 68 A.2d 916; In re Gato's Estate, 1950, 276 App.Div. 651, 97 N.Y.S.2d 171, affirmed, 1950, 301 N.Y. 653, 93 N.E.2d 924, applying Florida law; Henderson v. Usher, 1936, 125 Fla. 709, 170 So. 846; Murphy v. Murphy, 1936, 125 Fla. 855, 170 So. 856; Regents of University System v. Trust Co. of Georgia, 1942, 194 Ga. 255, 21 S.E.2d 691; Succession of Ratcliff, 1947, 212 La. 563, 33 So.2d 114; Trimble v. Hatcher's Ex'rs, 1943, 295 Ky. 178, 173 S.W.2d 985, certiorari denied Trimble v. Justice, 1944, 321 U.S. 747, 64 S.Ct. 611, 88 L.Ed. 1049; Hampton's Adm'rs v. Hampton, 1920, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515; Martin v. Martin's Adm'r, 1940, 283 Ky. 513, 142 S.W.2d 164.

In Pearcy v. Citizen's Bank & Trust Co. of Bloomington, supra [121 Ind.App. 136, 96 N.E.2d 923], the gross taxable estate of the intestate decedent included, in addition to property passing into the hands of the administrator, real estate owned by the decedent and his wife as tenants by the en-

tirety and jointly owned bonds and bank account. The question was there raised whether the administrator should be required to apportion the federal estate tax on such properties. In holding such apportionment should be made, the court said:

"We agree with appellants when they say the net effect of Riggs v. Del Drago, supra, is that the states *may* legislate on the subject of apportionment of estate tax only because Congress has *not* done so in the Federal Estate Tax Act. By the same token, there is nothing in the Act of Congress to hamper the state courts, in the exercise of their jurisdiction over the administration and settlement of estates, from applying equitable rules whereby, as the result of case law, equitable apportionment of this tax is accomplished in each estate."

In disposing of the argument that the court should follow the rule laid down in the earlier majority of cases that the entire burden should fall on the residuary of the probate assets in absence of other direction by the decedent or a statute (the rule exemplified by cases cited above) the court said:

"Some of these cases do tend to lend some support to appellees' position. However, it is to be noted most of them were decided before the case of Riggs v. Del Drago, supra. For the reasons hereinafter stated we are of the opinion they are based on an erroneous concept of the Federal Estate Tax Act. * * *"

The court then analyzed the cases of Hooker v. Drayton, supra, (which held burden should be apportioned between probate estate and beneficiaries of power of appointment exercised under will prior to amendment of federal estate tax specifically providing for apportionment of burden as to exercise of powers of appointment by will, Section 826(d) 26 U.S.C.A., and Hampton's Adm'rs v. Hampton, supra, and quoted the following from the last cited case where the Kentucky court considered the provision in the federal act that the duty to pay the tax was imposed on the executor:

"* * * Considering the act as a whole, and particularly the provisions with respect to reimbursement and contribution, we cannot escape the conclusion that Congress did not intend to discriminate between the heirs and distributees, but intended that every portion of the estate should bear its proportionate part of the tax, subject, however, to the right of the decedent to provide by will out of what portion of his estate the tax should be paid."

The Indiana court then noted the reaffirmance of the Hampton case by the Kentucky court in Martin v. Martin's Adm'r, supra, and referred to similar holdings in

Florida, Louisiana and Georgia, and concluded with the following appraisal and determination:

"We believe the cases from the states holding against the right of apportionment except where there is specific statutory authority therefor, or a specific provision therefor in the will of the decedent, are based upon an erroneous concept of the Federal Estate Tax Act and a misinterpretation of the provisions thereof. The Act does not apply only to the legal estate of a decedent which in this state generally means only the personal property owned by an intestate decedent at the time of his death, except where it is necessary to use all, or a portion, of the real property he owned to pay debts. It also includes in the gross estate of a decedent real estate owned by the decedent with another as tenants by the entireties and personal property owned jointly going to the survivor. Obviously the administrator of the legal estate has nothing to do with such property. Neither can he, under our law, use the assets of the legal estate to enhance the value of such property. Yet that is the effect of the judgment of the trial court in this case [which had refused apportionment].

"Therefore, we hold the federal estate tax should be apportioned between the appellants and the widow."

In Miller v. Hammond, supra, the widow of the decedent elected to renounce the will of her husband and take her statutory dower. For reasons not pertinent to this decision the Ohio court held under the federal act authorizing marital exemptions and the Ohio laws the widow's dower was not subject to tax, but the court expressly approved the rule, and we quote [156 Ohio St. 475, 104 N.E.2d 18]: "In the absence of a testamentary direction to the contrary the federal estate tax on all the property within the testamentary estate will be paid from the residue while all nontestamentary interests will bear only the burden of estate taxes as attributed to them."

Of the decision in Y. M. C. A. v. Davis, supra (which it is to be noted originated in Ohio) the court said:

"The Y. M. C. A. case, supra, is in accord with the general rule as disclosed by the weight of authority throughout the United States but it should again be emphasized that in the instant case no question of testamentary distribution of estates is involved. the estate passing to the widow is nontestamentary and the decision herein is thus limited. This is so for the reason that in each instance where the disposition of property is by will the duty devolves upon the court to ascertain from the instrument itself, if possible, the intent of the testator as to the burden of the federal estate taxes."

As against the argument the probate court had no authority to direct apportionment in the absence of a statute so providing, the Ohio court said:

"The executors argue that since Ohio has not adopted a statute providing for the apportionment of federal estate taxes, the Probate Court has no authority to do so. It should be observed that the apportionment statutes adopted by various states usually extend their operation to the division of the federal estate tax not only between those who take by intestate succeson but between specific legatees and the general residuary legatees. Such statutes are contrary to the implication that federal estate taxes are to be paid by the residuary estate resulting from the failure of the testator to direct a division of the estate taxes. The power to make apportionment in such cases has been exercised by the courts before the adoption of apportionment statutes. See Gaede, Exr. and Trustee, v. Carroll, 114 N.J.Eq. 524, 169 A. 172. However the absence of such a statute in Ohio does not deprive the Probate Court of authority to make such apportionment as to intestate estates."

Shortly after this decision, its doctrine was followed and further developed in McDougall v. Central Nat. Bank of Cleveland, supra. In this case the decedent died intestate after the creation of an irrevocable inter vivos trust and it was necessary to rule whether the intestate estate should bear the burden of taxes attributable to the inclusion in the gross taxable estate of the inter vivos trust properties. The Ohio court quoted the following language from Riggs v. Del Drago, supra, to show the interpretation in that case was the burden of the federal estate tax should fall upon the estate as a *whole* [157 Ohio St. 45, 104 N.E. 2d 443]:

"We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax * * *.

" * * * That act [of 1916] directed payment by the executor in the first instance, § 207, but provided also for payment in the event that he failed to pay, § 208. It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax. * * *

"\* \* \* Section 826(b) (26 U.S. C.A., § 826(b)), does not command that the tax is a non-transferable charge on the residuary estate; to read the phrase 'the tax shall be paid out of the estate' as meaning 'the tax shall be paid out of the residuary estate' is to distort the plain language of the section and to create an obvious fallacy."

This quotation is then followed by the statement of the Ohio court:

"The reasoning in that case indicates that there was no congressional intention which would operate as a reason against apportionment of the tax burden in part to non-probate assets."

The court also pointed out the situation is not unlike that where one person is primarily liable for the discharge of a common obligation, but is nevertheless not precluded from the exercise of a right of contribution against some one else on account of that obligation. Many instances are then cited where the Ohio courts have apportioned such burden without the help of any statute, and declared that in the absence of any apparent intention of a decedent to the contrary, one who paid more than his share of the common obligation under the Federal Estate Tax Act should be entitled to contribution from those who have not paid their share.

The reasoning of the cases analyzed and others cited declaring for the doctrine of equitable apportionment is sound and just. We are in accord with the interpretation placed upon Riggs v. Del Drago, supra, and the Y. M. C. A. case.

 We have not tallied the jurisdictions on each side, but although the earlier rule may still represent the majority opinion of jurisdictions passing upon the question, we feel no compunction to adhere inelastically to a rule which in the view of this court is not productive of substantial justice. Certainly the vitality of our legal system derives in large part from the function of our courts in applying its *root* concepts, among them that of equal treatment, to ever new and diversified problems. Accordingly, the action of the lower court in apportioning to the appellant her pro rata share of the tax burden arising from the joint tenancy property is affirmed. Therefore, the rule is nonprobate assets includible in the gross taxable estate shall bear their proportionate share of the burden of the federal estate tax, subject, however, to the power of the testator to make other specific provision.

 The argument the amount of the federal estate tax attributable to the jointly owned property should be apportioned on the basis of what the tax would be if it were the only taxable asset in the estate is without merit. The same contention was made before the Supreme Court of Louisiana in Succession of Ratcliff, 1947, 212 La.

563, 33 So.2d 114, 117. There the wife argued that where the husband leaves a large separate estate and a small community estate the only just way to apportion the tax is to compute what would have been due on the community alone and divide it equally between the shares of the husband and the wife. The court there said:

"* * * We think that the failure of counsel to discover the justice in requiring that the tax be shared proportionately by all emanates from their unwillingness to recognize that there is but one estate for federal taxation purposes and that the tax is levied on the whole, i. e.—the community and separate property. This being so, equitable principles demand that the burden be divided between all persons sharing in the estate in accordance with their respective interests. *There is no just way to apportion the tax burden by measuring it by different rates.*" (Emphasis ours.)

We also note the following language treating the same question in McDougall v. Central National Bank of Cleveland, supra, to wit:

"In the instant case, in determining the share of the common obligation represented by the estate tax which should be allocated to the trust estate, there appears to be no fairer or more reasonable approach than to compare the value for estate tax purposes of nonprobate assets which had an effect in generating estate tax liability with the value for estate tax purposes of probate assets which had that effect, and to allocate on that basis to nonprobate and to probate assets their proportionate share of the whole estate tax liability. See 13 American Jurisprudence, 26, 27, Section 26. Thus, in the instant case, the trust estate will be required to pay such portion of the total tax paid as the value of the trust assets, for estate tax purposes, bears to the sum of (a) the net estate, for estate tax purposes, and (b) the exemption allowed in computing that net estate, determined under Section 935(c), Title 26, U.S.Code."

The question of the validity of the tax measured by the entire value of property held in joint tenancy is no longer an open question. United States v. Jacobs, 1939, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763. In accordance with the doctrine of equitable apportionment herein applied it is only right and fair that since the entire property is taxed the survivor should bear the entire burden, for while she may protest she is, in part, being taxed on something she already owned, if the probate estate bore any of the tax it would be taxed on something of which no part ever passed or devolved to it.

It is therefore our conclusion the action of the lower court was in all respects correct in approving the apportionment of the tax burden to the surviving wife on property held in joint tenancy and the method of computation of the amount of that burden is approved.

The substance of one cross-appellant's argument is based upon the following facts:

In 1941 the decedent borrowed $10,000 from the Kanawha Valley National Bank in Charleston, West Virginia, for which he executed a promissory note. The indebtedness was collaterally secured by the pledge of certain life insurance policies in which the decedent was the insured and his wife the beneficiary. She joined in the assignment of the policies. The note was renewed from time to time and upon the death of the insured there was outstanding to the bank an indebtedness of $10,272.10.

Instead of proceeding first against the estate of the deceased, the bank collected the proceeds from one of the policies so assigned, that of the Metropolitan Life Insurance Company, for face value of $20,000, retained the amount due it, and paid the balance remaining to the wife as beneficiary.

Thereafter, as testified by one of the executors of the estate, a claim against the estate was filed in the name of the bank for the amount of the indebtedness on the theory the estate would have the benefit of a credit against taxes and the wife would be reimbursed with the amount of the claim. The claim was allowed and the lower court ruled the wife, appellant here, was entitled to be subrogated to the claim of the bank for such amount, which ruling is sought to be reversed here by cross-appellants.

It is the contention of cross-appellants that the testator and insured intended that in the event his wife renounced his will his estate should not be liable for the debt but the insurance proceeds should be looked to solely to retire the note. They seemingly urge some language in the will evinces this intention, but none is pointed to and we are unable to find any, unless it be the general clause directing payment of decedent's debts which they perhaps feel is suspended under Item 7 of the will (heretofore quoted in full) as respects any obligation of the decedent for which the wife was secondarily liable through the loss of insurance benefits. But we doubt that Item 7 was intended to have such effect.

The cases seem to be unanimous in holding the intention of the insured is the controlling factor. (See cases cited infra under this point).

Certainly if the insured had wanted to block or limit his wife's benefit under the policy of insurance there were several effective methods open to him for the accomplishment of such purpose. He ex-

pressly reserved the right to change the beneficiary under the contract of insurance and also the terms of the assignment—yet he did not exercise this power to appoint another beneficiary. He could have provided in the terms of the assignment the beneficiary would have no right of subrogation of reimbursement—but he did not so provide. He could have made the insurance proceeds the primary source for payment of the indebtedness in the event of his death. Neither was this done. But, in fact, as the matter stood at the time of his death, the insurance policy was not primarily liable on the debt—the estate of the decedent was. The right of the wife as beneficiary, formerly inchoate, became vested, subject only to secondary or collateral liability for the payment of the claim to the bank. We can only conclude under these circumstances it was the intention of the insured that his wife should be the beneficiary of the policy and entitled to all rights accruing to her as such—including that of subrogation. Especially so when the decedent was characterized by his attorney, one of the executors of his estate, as a most astute manager of his financial affairs.

The fact the bank proceeded first against the proceeds of one of the life insurance policies cannot prejudice the right of the wife to reimbursement and the action of the trial court in approving her claim of subrogation was correct.

In the following cases involving facts substantially similar to those at bar the above principles were applied. Barbin v. Moore, 1932, 85 N.H. 362, 159 A. 409, 83 A.L.R. 62; Smith v. Coleman, 1945, 184 Va. 259, 35 S.E.2d 107, 160 A.L.R. 1376; In re Cumming's Estate, 1951, 200 Misc. 467, 105 N.Y.S.2d 104; Russell v. Owen, 1932, 203 N.C. 262, 165 S.E. 687; Farracy v. Perry, Tex.Civ.App.1929, 12 S.W.2d 651; Katz v. Ohio Nat. Bank, 1934, 127 Ohio St. 531, 191 N.E. 782; Mutual Life Ins. Co. v. Illinois Nat. Bank, D.C.1940, 34 F.Supp. 206; Ex parte Boddie, 1942, 200 S.C. 379, 21 S.E.2d 4; Blair v. Baker, Md.1950, 76 A.2d 129 and Schum v. Lawrenceburg Nat. Bank, 1950, 314 Ky. 297, 234 S.W.2d 962, where earlier Kentucky cases reaching a different result on application of the same essential principles are discussed.

There is some authority to the effect the assignment of an insurance policy as collateral security in effect changes the beneficiary of the policy at least pro tanto and thereby defeats the right of the named beneficiary to more of the insurance proceeds than the amount remaining after the assignee is satisfied. The case of Merchants' Bank v. Garrard, 1924, 158 Ga. 867, 124 S.E. 715, 38 A.L.R. 102, is perhaps the leading case so holding. But certainly the rule here approved is not only supported by better reasoning but by sound equitable principles as well.

Cross-appellants seize upon the omission of the wife to file a claim against the estate in her own name for such sum and urge because of such fact she is precluded from receiving the money from the estate under the provisions of section 33–803, N. M.S.A., 1941 Comp. This contention is without merit and if upheld would award to cross-appellants an unconscionable advantage in the defeat of the right of the widow to the amount of the proceeds of the insurance policy used to satisfy an indebtedness on which the estate of the decedent was primarily liable. The claim for the debt was filed against the estate in the name of the bank and duly approved. Thus, the fact of the claim and the amount due thereunder was fully established in the regular course of probate. The direction of the lower court to credit the widow with the amount of the claim under the doctrine of subrogation is entirely in accord with equitable principles.

Cross-appellants also assign as error the declaration of the lower court that the entire tax levied by the State of New Mexico should be borne by the decedent's half of the community after division.

A tax in the total sum of $33,263.82 has been paid to the State of New Mexico. Of this amount $4,620.37 was in payment of the "basic" New Mexico tax levied under section 34–102, 1941 Comp. on "All estates which shall pass by will or inheritance or by other statutes", and no objection to the burden of this tax is made by cross-appellants. The remainder of the tax so paid, $28,643.45, was levied under section 34–125, supp. to 1941 Comp., the pertinent provisions of which are as follows:

"In case the tax imposed upon the net estates, which shall pass by will or inheritance, or by other statutes, as provided by chapter 34, article 1 of the 1941 Compilation, being sections 34–101 to 34–124 of the 1941 Compilation, both inclusive, does not equal 80% of the tax imposed upon the value of the net estates and transfers of the decedent, under sections 810 to 813, inclusive, of chapter 3 of the 'Internal Revenue Code,' being 53 Stat. 119 to 126, and all amendments thereto (U. S.C., tit. 26, §§ 810–813), or does not equal any other credit allowed by the federal government on estate taxes imposed upon the net estates and, in that event, *there is hereby levied an additional tax which shall be, and is hereby imposed upon the value of the net estates, as of the date of the determination of such federal estate tax,* equal to the difference between the total of the estate and transfer tax imposed by chapter 34, article 1 of the 1941 Compilation, and 80% of the tax imposed by the basic federal estate tax, as amended, above referred to, or

any other credit allowed by any other Act of Congress, as against any estate or transfer tax imposed by said Internal Revenue Code, and all amendments thereof and thereto. Such additional tax to absorb said credit shall equal the difference between the basic New Mexico estate and inheritance tax in such proportion of the 80% federal credit as the value of the property of the estate taxable in New Mexico bears to the total value of decedent's estate, and shall be determined, assessed, collected and paid in the manner provided by chapter 34, Article 1 of the 1941 Compilation (§§ 34–101–34–124); provided that the tax hereby imposed shall be assessed and collected only so long as the credit granted under section 813 of chapter 3 of the Internal Revenue Code (U.S.C., tit. 26, § 813), or any amendment thereto, is allowed. * * *" (Emphasis ours.)

This statute was passed to enable the State of New Mexico to take advantage of the federal 80% credit provision. 26 U.S. C.A. § 813(b). The tax so imposed does not increase the amount of tax liability, but merely authorizes the state to share in the proceeds of the federal estate tax to the extent of the allowable credit—80% of the basic federal estate tax. Legislation looking to the same purpose has been adopted in most of the states, commonly called "slack" or "take-up" statutes. An interesting article treating of the history and philosophy behind the enactment of the federal credit provision and the reaction of the states thereto is found in 13 N.C.L.Rev. 271.

The language and the operation of the statute are determinative that an "estate" tax is thereby imposed. See Strauss v. Calvert, Tex.Civ.App.1952, 246 S.W.2d 287, 289, where in considering a statute substantially similar to section 34–125, supra, it was said:

"It is seen that Section 1 levies a tax—'upon the net estate' etc., and the tax is levied upon 'the entire net value', etc., and the tax 'on each such estate' shall be, etc.—

"The tax is levied on the entire net value of the taxable estate situated and taxable within the State, such tax is therefore an estate tax. Simco v. Shirk, 146 Tex. 259, 206 S.W.2d 221. See Brown v. State, 323 Mo. 138, 19 S.W.2d 12; Stebbins v. Riley, 268 U. S. 137, 45 S.Ct. 424, 69 L.Ed. 884."

Under the New Mexico statute, since the interest of the surviving wife is includible in determining the federal estate for tax purposes, some portion of the state tax as levied is based upon that interest. Neither the validity of the imposition of

the tax, or the inclusion of the surviving wife's interest in the community estate in arriving at the value of the net estate and the resultant tax levy is made the basis of contention in this case. The only question raised is one internal to the estate—whether the surviving wife should be required to bear that portion of the state tax attributable to her share of the community property. So realized, the problem is the same as that raised and considered hereinbefore respecting her liability (as between her and cross-appellants) to account for the portion of the federal estate tax generated by her share of the community assets. The principles found to be controlling under that point likewise control here. Accordingly, it was error for the lower court to place the entire burden of the state tax upon cross-appellants, and the tax should be apportioned between them and the surviving wife as to such community interest in accordance with the method of apportionment herein approved.

Before leaving this question it is well to refer to the persuasive opinion in Succession of Wiener, 1943, 203 La. 649, 14 So.2d 475, where it was held if the Louisiana "slack" or "take-up" statute were construed as requiring the inclusion of the interest of the surviving wife in the community property in arriving at the amount of taxes due by those taking under the will of the decedent, the statute would be violative of the Fourteenth Amendment to the United States Constitution because it would impose a tax upon those succeeding to the estate of a decedent which would be measured in part by the property of another. Appeal from this decision to the United States Supreme Court was based on the question of the validity of the federal estate tax under the Fifth Amendment to the Constitution, and was dismissed on the ground determination of that question would not be dispositive of the case. Flournoy v. Wiener, 1944, 321 U.S. 253, 64 S.Ct. 548, 88 L.Ed. 708.

The determination of the lower court is approved and affirmed as to all matters raised here, except the burden of the state estate tax should be apportioned between appellant and cross-appellant in a manner consistent herewith and the cause is remanded with direction to the lower court to amend its judgment in harmony herewith.

Fifty per cent of the costs of this appeal shall be borne by the appellant, and the remaining fifty per cent shall be borne by appellees and cross-appellants.

It Is So Ordered.

SADLER, C. J., and McGHEE, COMPTON and LUJAN, JJ., concur.