INDUSTRIAL TRUST COMPANY, *Ex'r, et al. vs.*
LOLITA D. BUDLONG *et al.*

NOVEMBER 10, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a bill in equity for the construction of the will of Milton J. Budlong, late of the city of Newport, deceased, and for instructions to the executor and trustee thereunder. When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with general laws 1938, chapter 545, §7.

The following facts among others appear from the bill

of complaint, the answers thereto, and from exhibits and testimony presented in the superior court. In 1929 Milton J. Budlong, at times hereinafter referred to as the decedent, created by a single instrument five separate irrevocable trusts, including three respectively for the primary benefit of his children Frances W., John and Milton Joseph Budlong with remainders to their issue, and also contingent remainders. In 1936 the decedent added other property to the above three trusts, thereby increasing them to a substantial sum, and in 1937 by separate instruments he set up three more irrevocable trusts, one for each of his above-named children.

The decedent was continuously trustee under all of the above-named trusts until the time of his death. Each of such trusts in substance authorized the trustee to pay to the respective primary beneficiaries such part or all of the net income as he should in his discretion determine and to add any undistributed income to the principal of the trusts. Later, in the year 1937, he also established a revocable insurance trust which, however, does not enter into the issues now before the court.

The decedent executed his last will and testament October 19, 1938. After providing for certain specific bequests he left the residue of his estate, amounting to approximately $950,000, in trust. The first clause of the will directed his executor as follows:

"* * * to pay from the principal of my estate, in such manner that the same shall ultimately be borne by the residue thereof and as an expense of administration, all inheritance taxes, succession taxes, transfer taxes, legacy taxes, death duties, and all other similar imposts and charges, whether imposed by any law of the United States, or of any State, to the end and with the effect, as far as possible, that the bequests and devises, other than of the residue hereinafter in this will contained, as well as any sums payable under any insurance policy or policies to named beneficiaries,

may be exonerated therefrom and be received by the several beneficiaries without deduction * * *."

On November 5, 1940 a codicil to the above will was executed devising a specific parcel of realty to decedent's wife, otherwise confirming the will, and making no reference to estate or inheritance taxes. The decedent died July 5, 1941 and his will and the codicil thereto were duly admitted to probate by the probate court of the city of Newport. He left surviving him as his immediate family his widow and the three children hereinbefore mentioned. However, his son John died August 6, 1941 leaving a posthumous child also named John who was born December 20, 1941 and who is the decedent's only grandchild. His other children are not married.

The executor of the decedent's will in filing the original federal estate tax return did not include in his taxable gross estate any part of the above-mentioned trusts of 1929 and 1937 for the benefit of his children. Thereafter a controversy respecting that question arose with the commissioner of internal revenue who contended among other things that the entire value of the corpus of each of such trusts should properly be included in computing the gross estate of the decedent for federal estate tax purposes by reason of the provisions of 26 U.S.C.A. §811(c) and in particular because of a clause added thereto by a joint resolution of congress passed March 3, 1931. That clause provided in effect that property as to which a decedent retained the right to designate the persons who shall possess or enjoy it or the income therefrom shall be included for federal estate tax purposes in such decedent's gross estate. The commissioner, therefore, after allowing certain credits asserted a deficiency which the executor duly paid with interest.

The question was thereafter further litigated and finally in *Industrial Trust Co.* v. *Commissioner of Internal Revenue,* 165 F.2d 142, it was held in substance that as to the inter vivos trusts for the children the values of the assets of the three 1929 trusts which had been transferred thereto

subsequent to March 3, 1931 and the value of the entire corpus of each of the three 1937 trusts should properly be included in the gross estate of the decedent for federal estate tax purposes. On that basis the final federal estate tax amounted to $282,951.20 after due credit for state taxes and federal gift taxes. Detailed figures and the method of computing the tax appear in evidence but need not be set out here. The inclusion of the corpora of the above trusts in figuring the decedent's gross estate for federal estate tax purposes resulted in the addition of about $52,000 to such tax as finally paid.

The Industrial Trust Company brought the present bill as executor and trustee under the will of the decedent, as sole trustee under the 1929 inter vivos trusts, and as co-trustee with the other complainant under the 1937 trusts. The respondents allegedly comprise all existing persons who have an interest in the 1929 and 1937 trusts just referred to and all persons who have an interest in the trust provided for in the residuary clause of decedent's will. Necessary guardians *ad litem* to represent a minor respondent and also one not competent were duly appointed by the superior court. Likewise a guardian *ad litem* to represent the interest of any unknown and unascertained person who has or may become entitled to any future contingent interest under the will was appointed by that court as was a similar guardian *ad litem* to represent like interests under the pertinent inter vivos trusts.

Several questions for our determination are set out in the bill of complaint. The first and basic question is as follows: "a. Whether any portion of the Federal estate tax of the estate of the decedent should be charged to the six trusts for the children, and if any portion should be so charged what formula should be used for determining that portion." In other words it is asked in substance whether or not the amount of the federal estate tax should in any manner be apportioned between decedent's residuary estate passing under his will and the inter vivos trusts of 1929

and 1937 set up by him primarily for his children. Those respondents having interests in the residuary estate contend that there should be such apportionment, whereas the respondents who have interests under the inter vivos trusts argue to the contrary and allege that the entire federal estate tax is properly chargeable to decedent's residuary testamentary estate.

It appears that the federal statutes, Internal Revenue Code §826(c), (d), provide respectively for the apportionment of federal estate taxes with reference to a testator's life insurance trust and property over which he had a power of appointment. There is, however, no such applicable federal statute dealing with apportionment in the case of irrevocable inter vivos trusts such as are involved herein. That being the case it seems settled that whether there is to be any apportionment of the federal estate tax between the testamentary estate proper and other property of the decedent is to be determined by state law. *Riggs* v. *Del Drago,* 317 U. S. 95. In that case it was held in substance that in the absence of limited exceptions created by certain sections of the Internal Revenue Code congress intended that the state law should determine the ultimate burden of the tax.

In a considerable number of states statutes have been enacted which specifically undertake to deal in different ways with the matter of apportioning the federal estate tax between a testator's direct testamentary estate and other property he may have left. Authorities from such jurisdictions, however, are of little help to us because in this state we have no such statute. Therefore we shall have to determine what is the law on the question now before us without the aid of any special legislative action. There are two cases in this jurisdiction which deal with tax apportionment problems in situations somewhat similar but not precisely on all fours with the instant cause. In *Hooker* v. *Drayton,* 69 R. I. 290, which involved the exercise of the power of appointment by a testator in his will and

which affected an estate which did not come under the subsequent amendment to the Internal Revenue Code relating to apportionment of the federal estate tax in connection with the exercise of such a power, it was held that apportionment of the tax should be made apart from any statute. In *Union Trust Co.* v. *Watson*, 76 R. I. 223, apportionment of the federal estate tax between a testator's testamentary estate and an inter vivos insurance trust agreement was ordered.

In the circumstances it is proper to first ascertain whether the decedent herein expressed his intent as to how and from what source the federal estate tax should be paid following the devolution of his property. Upon examination it appears that he made no direction whatever in any of the trust instruments under consideration in regard to the payment of inheritance taxes. However, the decedent's will, which was executed subsequently to any of these trust instruments, expressed his intent in certain respects in the provision which we have hereinbefore quoted. In our opinion an examination of the language used in that clause shows clearly that while he directed his executor to pay all taxes from his residuary estate such payment apparently was only for the following express and limited purpose, namely, "to the end and with the effect, as far as possible, that the bequests and devises, other than of the residue hereinafter in this will contained, as well as any sums payable under any insurance policy or policies to named beneficiaries, may be exonerated therefrom and be received by the several beneficiaries without deduction * * *." The clause contains no reference to payment of any taxes which might be imposed by reason of the inter vivos trusts in question.

It is our judgment therefore that in the decedent's will there is no clearly-expressed intent that the federal estate tax which might be chargeable by reason of the inclusion for tax purposes of the inter vivos trusts of 1929 and 1937 in his gross estate should be paid from the residuary estate

under his will. The language he used is not definite and comprehensive enough to bring about that result. In the circumstances we find nothing in the will which specifically directs or *requires* such payment. On the other hand we do not find therein anything which expressly *prohibits apportionment* of the federal estate tax between such trusts and the decedent's testamentary residuary estate. In other words his intent, if he had one in that connection, is left entirely to conjecture.

Those respondents who are opposing apportionment contend that, in this situation and in the absence of statutory enactment dealing with such inter vivos trusts, the weight of authority supports their position. Accordingly they argue to the effect that the general rule of law places the burden of the federal estate tax in its entirety upon the residue of the general testamentary estate, regardless of what other property may have been considered in figuring the testator's gross estate for federal estate tax purposes. As examples of cases so holding they have cited *Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 477, *Bemis* v. *Converse,* 246 Mass. 131, and *Gelin* v. *Gelin,* 229 Minn. 516. They also urge that this court in *Hazard* v. *Board of Tax Commissioners,* 43 R. I. 431, recognized this rule of law when at page 444 it approved the following language: "failing any testamentary provision to the contrary debts charges and all just obligations upon an estate must be paid out of the residue."

The respondents who are seeking apportionment do not seriously question that the above rule of law generally speaking has been often recognized and applied. However, they argue that this court in *Hooker* v. *Drayton, supra,* upon which they rely, has clarified and expressly limited the principle of law set out in *Hazard* v. *Board of Tax Commissioners, supra;* that the instant cause is governed by our decision in the *Hooker* case; and therefore that apportionment of the federal estate tax should be directed.

In that case the question of tax apportionment then

before the court was carefully considered and discussed at some length. It is unnecessary therefore to refer in detail to all the matters there covered. However, at page 295 of that opinion the following pertinent holding appears: "Now what is the applicable state law here? It is true that the rule here is, as it is generally, that, in the absence of a contrary testamentary direction, the burden of all debts, charges and obligations falls upon the residue of the estate. *Hazard* v. *Board of Tax Commissioners, supra.* But the rule as thus stated is applicable only to the true estate of the testator within the meaning of our law of property." We then held that under such law property which is transmitted by a testator in the exercise of a power granted to him by another to appoint by will is neither in law nor fact part of the testator's estate. Further the court cited authority showing that an act of congress, such as the federal estate tax statute designed to facilitate the collection of the federal revenue, does not alter the law of property of this state.

Moreover at page 296 in *Hooker* v. *Drayton,* when dealing with a federal estate tax in relation to appointed property under a will, we said: "In the absence of a clearly expressed intent to the contrary in the decedent donee's will such tax is ultimately to be borne by the appointed property, and not by his residuary estate. Such a rule is more consistent with logic and the realities than is a rule which, in the absence of a testamentary expression to the contrary, would assume that the residuary estate of the donee was chargeable with such tax burden." The same general principle was affirmed in *Union Trust Co.* v. *Watson, supra.*

The respondents who oppose apportionment of the federal estate tax argue strongly that the instant cause is not governed by the decision of this court in the *Hooker* case. They contend among other things that such case rests upon its own peculiar facts and circumstances; that the rule of apportionment enunciated therein constitutes an

exception to the general rule and should be limited to appointed property; and that, in the absence of statute or the testator's direction, the application by the court of the doctrine of apportionment of federal estate taxes to an inter vivos trust is contrary to the great weight of authority and unless settled by legislative action can cause many difficult problems. Further they contend in substance that the *Hooker* case is not contrary to the rule of law which generally imposes the burden of estate taxes upon the residue of the testamentary estate.

In view of these contentions we have again examined the decision in the *Hooker* case and we cannot agree with the contention that the present cause is not governed by that case. On the contrary we are of the opinion that the basic reasoning set out in that case and the general principles of law upon which the decision therein rests are applicable herein.

In that case we were laying down a general principle of law for application in all cases of a like nature and not a principle of law for use only in that particular case when we held that the rule of law referred to in *Hazard* v. *Board of Tax Commissioners, supra,* respecting the incidence, under certain conditions, upon the residue of an estate of the burden of all debts, charges and obligations "is applicable only to the true estate of the testator within the meaning of our law of property." Such *true estate* comprises merely that property which actually passes directly from the testator, either by operation of the law of this state or under his will, and does not include property contained in a separate irrevocable inter vivos trust as here or property passing by virtue of an exercise of a power of appointment as in the *Hooker* case. Although these last-named properties may be required by federal law to be included in the decedent's gross estate for tax purposes only they are neither in law nor in fact actually part of his true estate.

In this connection, for the purpose of applying the

legal principle in question, we can see no fundamental distinction between property which passes under a power of appointment, and property which the decedent by an irrevocable inter vivos trust had previously and definitely placed out of his control and had given to another. Neither of such properties is legally a part of the decedent's true estate. The other contentions advanced against apportionment are not of controlling force. Legislative action in that regard might simplify the situation, but in its absence we are called upon to apply the law of the state as we find it. We recognize that the weight of authority, broadly speaking, is contra to the law as laid down in the *Hooker* case, but we are of the opinion that in the long run the law as therein established will lead to more equitable results in directing the impact of the federal estate tax. It may be also noted that the decision in *Regents of University System of Georgia* v. *Trust Co. of Georgia,* 194 Ga. 255, was to the same general effect as that in the *Hooker* case.

We therefore find that in the present cause there should be apportionment of the federal estate tax on the decedent's estate and that a portion of such tax should be charged to the six trusts for his children. We are of the opinion that the formula to be used for determining that portion should be similar to the one set out in the Internal Revenue Code §826(c), (d), respecting apportionment in the case of life insurance and property subject to appointment. In making the computation it is our judgment that the method set out in *Matter of Blumenthal's Estate,* 46 N.Y.S.2d 688, 293 N.Y. 707, of giving credit for gift taxes paid by the decedent in his lifetime when the inter vivos trusts were created should be followed.

In view of the above answer to the first question propounded in the bill of complaint it becomes necessary to consider the following questions which are contained therein:

"b. Whether any portion of the interest paid on the

Federal estate tax should be charged to the six trusts for the children, and if any portion should be so charged what formula should be used for determining that portion.

"c. Whether the portion, if any, of the interest on the Federal estate tax chargeable to the estate of the decedent should be charged to income or principal.

"d. Whether the portion, if any, of the interest on the Federal estate tax chargeable to the six trusts for the children should be charged to the income or principal thereof. * * *

"h. Whether any portion of the expense incurred for the fees and disbursements of counsel in connection with the proceeding herein mentioned should be charged to the six trusts for the children, and if any portion should be so charged, what formula should be used for determining that portion."

In answer to the question designated (b) it is our opinion that only a portion of the interest paid by the executor of decedent's estate on the federal estate tax should be charged and apportioned to the six trusts for his children. In reaching that conclusion the following facts and dates are of importance. It appears that the federal estate tax herein was due on October 5, 1942 and as computed by the executor was paid a few days prior to that date. Thereafter on December 18, 1944 the commissioner of internal revenue by formal notice to the executor asserted a deficiency in the tax payment bearing interest from October 5, 1942. Such deficiency together with interest from the date last referred to was duly paid by the executor September 5, 1946. Later, after certain litigation had terminated in 1948, decedent's estate was reimbursed by the commissioner by his payment of certain sums on account of principal and interest advanced by it in 1946 to pay the asserted deficiency, which thereafter was reduced in amount, and was also reimbursed by certain sums on account of interest allowed on such refunds.

We are of the opinion therefore that a portion of the interest which accrued between October 5, 1942 and December 18, 1944 on the federal estate tax should be apportioned and charged to the six trusts, but that no interest whatever which accrued after December 18, 1944 should be so apportioned and charged. In ascertaining such portion the formula to be used should, as far as applicable, be the same as that which is employed in apportioning the federal estate tax itself between the decedent's testamentary residuary estate and the above-mentioned trusts, which should be duly credited with their proper and proportionate share of the refunds of interest made to the estate.

In respect to questions (c) and (d) it is our judgment that the portion of the interest on the federal estate tax chargeable to the estate of the decedent should be charged to income, and similarly that the portion of the interest on the federal estate tax chargeable to the six trusts should be charged to the income thereof. The law as set out in *Industrial Trust Co.* v. *Winslow,* 60 R. I. 61, is controlling on this point. Possibly a situation might arise in which it would be proper to charge a part of such interest to income and a part to principal, as has been suggested herein by certain parties, but in our opinion the instant cause calls for no deviation from the general rule in this regard.

Concerning question (h) we find that it is equitable that a portion of the expenses incurred for the fees and disbursements of counsel in connection with litigation respecting the federal estate tax should be charged to the six trusts and that such portion should be ascertained by employing as nearly as may be the same formula as that used for determining the apportionment of the federal estate tax itself.

The representatives of decedent's testamentary residuary estate contend that if apportionment be ordered the six trusts should reimburse the estate for loss of income, which reasonably would have been earned, by paying interest on the sums the executor paid for the benefit of such

trusts. Apparently no serious opposition is raised to this contention. It is our opinion that reimbursement should be made through the payment by the said trusts of interest on such sums as it may be determined should properly be apportioned and charged to the trusts and were paid by the executor of the estate on account of principal and interest due under the federal estate tax. However, in our judgment no interest should be charged to the trusts in connection with the payment by the executor of fees and expenses respecting the litigation conducted regarding such taxes. It is admitted that the fair average return on the trusts herein involved is approximately 4 per cent. Therefore interest chargeable to the six trusts in this instance should be at that rate. Any interest so paid by the trusts should be charged to the income thereof.

We have answered all the questions in the bill of complaint which have been briefed and argued. However, the respondent Marine Midland Trust Company of New York, a corporation of that state, as the present guardian of the estate of the minor respondent John Budlong by appointment of a New York court, asks us in its brief to dismiss the bill of complaint in so far as it is concerned in its representative capacity, relying upon the case of *Bircks* v. *Armstrong,* 73 R. I. 232. An examination of the present record discloses that no formal motion to the above effect was ever filed herein, and that the question was not brought to the attention of the superior court when the cause was ready for hearing for the entry of final decree. In that court such respondent entered only a general appearance and also filed an answer to the bill of complaint. In view of the instant record and of all the circumstances herein we are of the opinion that the respondent's above request must be denied.

On November 20, 1950 the parties may present to this court a form of decree in accordance with this opinion for entry in the superior court.

*Letts & Quinn, Richard F. Canning,* for complainants.

*Edwards & Angell, Walter A. Edwards, John C. Hover,* of New York Bar, for respondent Lolita D. Budlong.

*Perkins, Higgins & McCabe, Fred B. Perkins, Eugene V. Higgins,* for respondent Frances Wilson Budlong.

*Hoyt W. Lark,* guardian *ad litem* of Milton Joseph Budlong.

*Thomas F. Black, Jr.,* guardian *ad litem* of John Budlong.

*Greenough, Lyman & Cross, Thomas F. Black, Jr., R. Gordon Scott, Jr.,* for Marine Midland Trust Company of New York as guardian of estate of John Budlong.

*George R. Beane,* Representative of contingent interests under testamentary trusts.

*Francis J. O'Brien,* Representative of contingent interests under inter vivos trusts.