J. HALLAM BOYD *et al., Ex'rs vs.* GEORGE JORDAN *et al.*

FEBRUARY 27, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

234

POWERS, J. This is a bill in equity for the construction of the will of Ferdinand Frazier Jelke, late of the city of Newport, deceased, and for instructions to the executors and trustees thereunder. When the cause was ready for hearing for final decree in the superior court, it was certified to this court for our determination in accordance with G. L. 1956, §9-24-28.

The following facts, among others, appear from the bill of complaint, the answers thereto, and from exhibits and testimony presented in the superior court. Ferdinand Frazier Jelke, hereinafter referred to as the decedent, died testate on August 30, 1953, and thereafter his last will and testament dated March 17, 1953 was proved, approved, allowed and ordered recorded on September 28, 1953. On the latter date letters testamentary were issued to the complainants Boyd, Jordan and Equitable Security Trust Company (now Bank of Delaware) as executors.

The bill of complaint recites and on sworn testimony the superior court justice found that on August 15, 1935, decedent, as settlor, created two inter vivos trusts for the benefit of his grandchildren, Frazier Jelke, III, and Joanne Batholomay Jelke. At the time of decedent's death the trustees of said trust were George Jordan, J. Hallam Boyd and Wilmington Trust Company. The bill further recites and the trial justice found that following the birth of his third grandchild Victoria Jaffray Jelke on April 10, 1939,

the decedent established an additional inter vivos trust for her benefit by transferring an equal amount from each of the two previous trusts. The trustees of this additional trust were Jordan, Boyd, and Wilmington Trust Company, and also Frazier Jelke, III.

It further appears from the bill of complaint and the testimony offered in support thereof that by indenture dated April 29, 1930 between F. Bartholomay Jelke, donor, and Irving Trust Company of the state of New York, as trustee, an intervivos trust had been created which provided that the income therefrom should be paid to decedent, father of the donor, during the lifetime of the decedent and thereafter to the donor during his lifetime.

Pursuant to the provisions of the internal revenue code, complainant executors filed a federal estate tax return on behalf of decedent's estate reporting a total gross estate of $6,366,322.86. After a claim for certain adjustments and credit for the payment of $324,145.62 for state death taxes, federal taxes were paid in the amount of $1,726,823.54. Thereafter on August 14, 1957, the commissioner of internal revenue issued a notice of deficiency in the amount of $6,398,782.25. The adjusted taxable estate resulted from a determination by an internal revenue examiner that certain dispositions made by decedent in his lifetime were subject to the estate tax. These dispositions included the 1935 and 1939 inter vivos trusts in part and the whole of the 1930 trust. This determination concluded that although F. Bartholomay Jelke was the donor in form of the 1930 inter vivos trust, the decedent was the donor in fact. Upon receipt of notice of said deficiency, complainant executors filed a petition in the tax court of the United States seeking a redetermination thereof and by stipulation a decision of said tax court was entered on August 19, 1959, in which it was agreed between the commissioner of internal revenue and the complainant executors that the deficiency due from the complainants was $1,500,076.46. Counsel for executors

conceded in the instant cause that neither F. Bartholomay Jelke nor Irving Trust Company, parties to the 1930 indenture, was made a party to the litigation resulting in the deficiency judgment.

The will of the decedent which is before us for construction and instructions specifically provided that any question arising therefrom should be construed and regulated in accordance with the statutes and laws of the state of Rhode Island.

After providing for certain specific legacies, which need not be considered here, decedent disposed of the residue of his estate by creating a trust, the corpus of which consisted of two thirds of the residue of decedent's estate with income for life to his grandson Frazier Jelke, III, and on his death to his issue, or, if no issue, to the decedent's granddaughters Victoria and Joanne or either, if one only were surviving, or to the issue of both or either as circumstances might require.

The remaining one third of the residue established the corpus of a trust, the income from which was payable to his granddaughter Victoria during her lifetime and thereafter to her issue; but if she predeceased her brother Frazier and her sister Joanne, or either of them, leaving no issue of her own, then to her brother and sister, or either of them as the case might be. The trusts thus created were to terminate on the death of the last survivor of the three grandchildren, at which time the corpora of both trusts would be distributed to their issue per stirpes. In the event that on the death of the last grandchild no issue of any survived, the corpora of the funds and all undistributed income would go to Frazier Jelke Foundation, Inc., a Delaware corporation created for religious, charitable and educational purposes.

The trustees designated by decedent were the same persons and corporations named by him to serve as executors, and his grandchildren, Frazier Jelke, III, and Victoria Jelke

on the attainment of their majority, conditioned however on their agreement to serve without compensation.

The instant bill was brought by the executors in their dual capacities as executors and trustees and by Frazier Jelke Foundation, Inc. as remainderman.

They joined as respondents George Jordan, J. Hallam Boyd, and the Wilmington Trust Company, as trustees under the agreement dated August 15, 1935; Frazier Jelke, III, Joanne Bartholomay Jelke and Victoria Jaffray Jelke, individually and in their capacities as trustees and/or beneficiaries under the several trusts; and F. Bartholomay Jelke, individually and as donor and beneficiary, and the Irving Trust Company as trustee under the indenture dated April 29, 1930. At the time the bill was brought, Victoria Jaffray Jelke was a minor and was represented by a guardian ad litem. She is now sui juris. A guardian ad litem was appointed by the court to represent persons unknown or not in being. All entered their appearances and filed their answers except the Irving Trust Company against which the bill was taken as confessed.

The first eight averments of the bill, which were admitted by all of the respondents except F. Bartholomay Jelke and the guardian ad litem, set out the travel of the cause as heretofore recited. The ninth and final averment related to the payment by the executors of counsel fees and disbursements amounting to $67,500 in connection with the redetermination of the tax deficiency. Respondent Victoria Jaffray Jelke admitted the latter averment, the guardian ad litem denied it and demanded proof, but all others neither admitted nor denied, leaving complainants to their proof. Testimony was offered in support of all nine averments and the trial justice found them to have been proved.

The bill of complaint prayed as follows:

"I. That this Honorable Court may enter a decree certifying this cause to the Supreme Court of the State of Rhode Island, in accord with, and as provided by,

*Section 9-24-48 [28], General Laws of Rhode Island (1956).*

"II. That the following questions be answered and determined:

"1. Whether United States Estate Taxes paid by said executors of the Estate of Ferdinand Frazier Jelke, deceased, should be apportioned among said executors and the trustees of said trusts created August 15, 1935, and April 29, 1930?

"2. Whether Rhode Island Estate and Inheritance Taxes paid by said executors of the Estate of Ferdinand Frazier Jelke, deceased, as provided by *Title 44, Chapter 22 and 23, General Laws of Rhode Island (1956),* should be apportioned among said executors and said trustees of said trusts created August 15, 1935, and April 29, 1930?

"3. Whether interest paid the United States of America by said executors of the Estate of Ferdinand Frazier Jelke, deceased, should be apportioned among said executors and the trustees of said trusts created August 15, 1935, and April 29, 1930?

"4. Whether obligations incurred by said executors of the Estate of Ferdinand Frazier Jelke, deceased, in connection with the determination of the said deficiency should be apportioned among said executors and the trustees of said trusts created August 15, 1935, and April 29, 1930?

"5. Whether said executors of the Estate of Ferdinand Frazier Jelke, deceased, are entitled to be reimbursed by said trustees of said trusts created August 15, 1935, and April 29, 1930, for the loss of income accruing to said Estate as a result of the payment of said deficiency tax, to be apportioned against said trustees of said trusts, if any, for the period September 14, 1959, to the date of entry of a decree terminating this proceeding?

"6. Provided United States Estate Taxes or Rhode Island Estate and Inheritance Taxes or interest or said obligations are to be apportioned, what method should be employed to determine the portion for which said executors or said trustees are responsible?"

"III. That such further and other relief may be granted in the premises as the Court may deem in equity and good conscience to be necessary."

With the exception of respondent F. Bartholomay Jelke and the guardian ad litem for persons unborn and/or unascertained, all respondents in their answers joined in a prayer that if apportionment were to be determined by this court, we should further determine proper apportionment between the various trusts in which they were trustees.

Respondent F. Bartholomay Jelke in his answer admitted only paragraph Third of the bill, which recited the provisions of article First of the will as follows:

"First: I direct my Executors hereinafter named to pay all my just debts and funeral expenses as soon after my death as practicable.

"I direct my said Executors to pay out of my residuary estate as hereinafter given, devised and bequeathed in Article Eighth of this my Will, as an expense of administration, any and all estate, inheritance, succession, legacy, transfer or similar death taxes, including any interest or penalties thereon, which may be levied or assessed in respect to any property or interest therein *passing under this my last Will and Testament or any Codicil thereto,* or against any legatee, devisee or beneficiary thereunder, without deduction from the pecuniary interest of any such legatee, devisee or beneficiary as might otherwise be required by law." (italics ours)

He concluded his answer with a prayer that the action against him and the Irving Trust Company be dismissed. The trial justice denied the prayer and certified the cause to this court.

Whether such denial was error is immaterial since it was not prejudicial. Dismissal of the respondent beneficiary and the respondent trustee would not have deprived the superior court in the first instance, and this court on appeal, of the jurisdiction conferred by G. L. 1956, §9-24-28, to construe the provisions contained in the will of a domiciled decedent. The complainants are not seeking an order binding on the

1930 trust or its trustee, but seek only construction of the will and instructions relative thereto. Hence the respondent F. Bartholomay Jelke's contention that the lack in the instant case of personal service on the trustee or jurisdiction of the res is fatal to the bill is without merit.

The six questions presented in the bill give rise to a preliminary question of grave importance, namely, whether the language of article First of the will is so broad as to provide for payment of the tax deficiency out of the residue of decedent's estate, thus leaving the various trusts considered a part of his gross estate for tax purposes free of any share in the burden.

This court was confronted with a similar question in *Industrial Trust Co.* v. *Budlong,* 77 R. I. 428, hereinafter referred to as *Budlong.* The relevant phraseology in the Budlong will was, at page 431, as follows:

> " '* * * to pay from the principal of my estate, in such manner that the same shall ultimately be borne by the residue thereof and as an expense of administration, all inheritance taxes, succession taxes, transfer taxes, legacy taxes, death duties, and all other similar imposts and charges, whether imposed by any law of the United States, or of any State, to the end and with the effect, as far as possible, that the bequests and devises, other than of the residue hereinafter in this will contained, as well as any sums payable under any insurance policy or policies to named beneficiaries, may be exonerated therefrom and be received by the several beneficiaries without deduction * * *.' "

Construing this language, the court stated at page 435, "It is our judgment therefore that in the decedent's will there is no clearly-expressed intent that the federal estate tax which might be chargeable by reason of the inclusion for tax purposes of the inter vivos trusts of 1929 and 1937 in his gross estate should be paid from the residuary estate under his will. The language he used is not definite and comprehensive enough to bring about that result."

We are of the opinion that the intention of the testator in the instant case is clearly more definitive than in *Budlong,* for he specifically limited the payment of estate taxes from the residue "to any property or interest therein passing under this my last Will and Testament or any Codicil thereto * * *."

Having thus decided, we are led to a consideration of the issue raised by the first two questions certified, namely, whether this is a proper case for apportionment. Again we are of the opinion that *Budlong* is controlling, wherein this court extended the doctrine first declared in *Hooker* v. *Drayton,* 69 R. I. 290.

The latter decision related to apportionment where property passing under a power of appointment exercised by the testator in his will was declared by this court to raise a proper case for apportionment. It was contended by the trustees of five inter vivos trusts, when the question again came before this court in *Budlong,* that the rule established by *Hooker* v. *Drayton, supra,* should not be extended. Replying to such contention this court stated at page 439, "we can see no fundamental distinction between property which passes under a power of appointment, and property which the decedent by an irrevocable inter vivos trust had previously and definitely placed out of his control and had given to another."

The circumstances of the instant case are very similar to those in *Budlong.* There, as here, it was the inclusion of the value of inter vivos trusts created by the testator which, added to his estate for tax purposes, gave rise to a question of apportionment.

We are therefore of the opinion that, subject to giving credit for gift taxes paid by decedent during his lifetime when the inter vivos trusts were created, apportionment should be had among the decedent's estate, the 1930 and 1935 trusts, proportionately conformable to the formula established by Int. Rev. Code of 1954, §§2206 and 2207,

respecting apportionment in the case of life insurance and property subject to appointment. Further, the apportionment as herein decreed is applicable to both the federal and state taxes.

The complainants have annexed to their brief a schedule setting forth in dollars the amount of such tax proportionately to be borne by the estate and the several trusts. For the reason that a determination of the accuracy thereof is not essential to our purposes, we restrict our opinion to the formula herein decreed.

The respondent trustees and beneficiaries of the 1935 agreement, which gave rise to the trusts established for the three grandchildren of decedent, have called to our attention that the total corpora of the three trusts were included as a lump sum by the United States tax authority in arriving at the total estate of decedent liable to taxation. They urge that apportionment if decreed to be proper should as to the total corpora be apportioned in the ratio that the corpus of each such trust bears to the sum total at the time of decedent's death. We are of the opinion that if in fact a marked variance existed vis-a-vis each trust with the others, apportionment as urged in the ratio suggested is consistent with equity and we are so persuaded.

We have not overlooked the contention made by respondent Joanne Bartholomay Jelke that since she does not share equally with her sister or her brother, particularly the latter, the corpus of the 1935 trust in which he is the named beneficiary should be subject to a larger contribution by way of apportionment than should the trust of which she is beneficiary. We find no merit in her complaint that otherwise she will be subjected to an obvious inequity. Such alleged inequity arises from the nature of the distribution made by decedent. We note furthermore that he, in the seventeenth article of his will, in explanation of the expressed omission of his granddaughter Joanne from the provisions of the trust established by his will, stated that he did so "for the reason

that I have made larger provision for her and her issue during my lifetime than I have made during my lifetime for the benefit of my other granddaughter, Victoria Jaffray Jelke and her issue." Again, in the same article of his will, decedent explained, "The provisions herein made for the benefit of my grandson and namesake, Frazier Jelke, III, are greater than those for the benefit of my granddaughters because, as a man, he will by law be subject to heavier obligations and responsibilities than a woman." Conceding her contention would be tantamount to rewriting the provisions specifically made by decedent.

In our judgment the tax to be apportioned among the decedent's true estate and the several trusts herein decreed subject to apportionment should be paid out of principal in each instance. This is the general rule and no circumstance has been suggested by the parties, nor has any occurred to us, which would warrant a departure therefrom.

The respondent trust beneficiaries urge that if apportionment is to be had, a distinction between accumulated income and principal must be made. They contend that the intention of the settlor was to vest in the beneficiaries an interest in accumulated income separate and apart from the principal of the trusts.

Considering briefly the terms of the trusts, it appears that income was to be applied to the maintenance, education, support and general welfare of the respective beneficiaries and so much of such income as was not so applied left to accumulate until such time as the beneficiaries attained the age of thirty years. Upon attaining the given age, the beneficiaries were to receive the accumulated income from the trustees.

The respondent beneficiaries further contend it is evident that the settlor in his own mind made a distinction between the accumulated income and the principal of the trust by his provision that the grandchildren Joanne and Victoria

were not to receive principal during their lives except at the discretion of the trustees.

We find their contentions to be sound. In our opinion the tax deficiency apportionment should be made from the true principal and not from a principal in which accumulated income is included.

We come now to the question of whether interest on the federal and state taxes should be apportioned and if so for what period and the applicable formula. In *Industrial Trust Co.* v. *Budlong, supra,* we held that interest should be apportioned between the due date and the date the deficiency was asserted by the commissioner of internal revenue and not for the period intervening between the latter date and the date on which the deficiency was paid. The significant dates in the *Budlong* case were October 5, 1942, due date, December 18, 1944, the date the deficiency was asserted, and September 5, 1946, the date on which the deficiency tax was paid.

In the instant cause the due date was November 30, 1954. The government asserted a deficiency on August 14, 1957 and a compromise deficiency was paid September 14, 1959. The complainants contend that by reason of the circumstances which differentiate the instant cause from the circumstances in the *Budlong* decision we should depart from the rule laid down in that case and decree apportionment of interest from November 30, 1954 to either August 19, 1959, the date on which the deficiency was stipulated, or September 14, 1959, when the deficiency was paid.

It appears from a reading of the *Budlong* decision that the amount of the estate was such as to permit the executors to pay the deficiency assessed when asserted. In the instant case, however, the taxing authority asserted a deficiency in excess of the gross estate and the executors were unable to pay whether they had deemed it advisable to do so or not. They resorted to litigation in the United States tax court for a redetermination and were successful

in having the deficiency sharply reduced as previously outlined. They argue that by reason of these circumstances the several trusts, to the extent that they were benefited by a reduction in the assessment, should be called upon to bear a proportionate share of the interest which amounted to several hundred thousand dollars.

We are of the opinion that there is merit in this contention. The equitable principle on which the doctrine of apportionment rests is persuasive of the proposition that, in the circumstances with which the representatives of decedent's true estate were confronted, so large a burden as that represented by the interest occasioned by the time consumed in litigation should be apportioned up to the time that the final deficiency was determined, namely, August 14, 1959. This date is comparable to that which was determinative in the *Budlong* decision.

We agree that the formula for apportioning such interest should be that used in apportioning the principal of the taxes imposed. We are also in accord with the rule laid down in *Industrial Trust Co.* v. *Winslow,* 60 R. I. 61, and followed in *Industrial Trust Co.* v. *Budlong, supra,* that the interest apportioned should be taken from income rather than principal unless, as was indicated in *Budlong* where at page 441 the court said, "Possibly a situation might arise in which it would be proper to charge a part of such interest to income and a part to principal, as has been suggested herein by certain parties, but in our opinion the instant cause calls for no deviation from the general rule in this regard."

We are persuaded that since the accumulated income in the instant cause is in the nature of a vested right, fixed and determined by the settlor, the interest on the tax deficiency should be taken from income only to the extent that it was earned during the period for which such interest is to be paid and any excess should be taken from principal.

In concluding that the accumulated income is in the nature of a vested right, we are governed by what appears to have been the intention of the testator-settlor. We believe that since the remaindermen in the inter vivos trusts are contingent, he would have considered the amount of the corpora to be contingent at any given time. This is in keeping with our conviction that it was the clear intention of the settlor not to have accumulated income flow back to the corpora as principal.

We are next confronted with the question of whether apportionment should be ordered of the obligations incurred in connection with the determination of the tax deficiency. None of respondents, except F. Bartholomay Jelke, has raised any objection to a determination favorable to complainants.

The respondent F. Bartholomay Jelke, however, argued vigorously that since neither he as beneficiary of the 1930 trust nor the Irving Trust Company as trustee thereof was made a party to that suit, or as he contends even made aware of it, it would be unjust and inequitable to order apportionment against them.

The complainants, on the other hand, contend that neither the beneficiary nor the trustee was a proper party in the litigation before the tax court and cite authority to the effect that the Internal Revenue Code, *supra*, looks to the executors for payment of all taxes in connection with the estate.

Notwithstanding such authorities, we are of the opinion that there is merit in the contention that the 1930 trust should not be called upon to bear a share of the obligations incurred by the executors in connection with the deficiency compromise. It may be that neither the trustee nor the beneficiary was a proper or necessary party to that suit, but it seems to us that they should have been consulted before the executors entered into a stipulation foreclosing said

respondent's contention that the 1930 trust was not properly includable in the gross estate for tax purposes.

Respondent F. Bartholomay Jelke argued before us, and it was not contradicted, that inherent in the stipulation was an admission that he was not the donor in fact of the 1930 trust. It seems to us that before such stipulation was made he should have been afforded an opportunity to present the executors, if not the tax authorities, with evidence, if he had any, that the premise on which the government asserted its claim was false. We are of the opinion that apportionment of the charges should be had as prayed except as against the 1930 trust.

The fifth certified question relates to whether interest should be apportioned for lost income to the estate resulting from payment of taxes and interest by the executors. We are of the opinion that it should, adhering to the rule adopted in *Budlong* on a similar question. There it was held at page 442, "* * * that reimbursement should be made through the payment by the said trusts of interest on such sums as it may be determined should properly be apportioned and charged to the trusts and were paid by the executor of the estate on account of principal and interest due under the federal estate tax." Continuing, the court stated, "It is admitted that the fair average return on the trusts herein involved is approximately 4 per cent. Therefore interest chargeable to the six trusts in this instance should be at that rate. Any interest so paid by the trusts should be charged to the income thereof."

We are of the opinion therefore that such interest should be apportioned but at a rate not in excess of the fair return determined to have been earned by the 1930 and 1935 trusts respectively.

The sixth and last question certified has already been answered.

On March 6, 1961 the parties may present to this court

for approval a form of decree in accordance with this opinion for entry in the superior court.

*Moore, Virgadamo, Boyle & Lynch,* for complainants.

*Higgins and Slattery,* for respondent trustees.

*Alexander G. Teitz,* for respondent Frazier Jelke, III.

*Christopher T. DelSesto,* for respondent Victoria Jaffray Jelke.

*Charles H. Drummey,* for respondent Joanne Bartholomay Jelke.

*Corcoran, Peckham & Hayes,* for respondent F. Bartholomay Jelke.

*Frederick W. Faerber, Jr.,* guardian ad litem for persons unborn and/or unascertained.